LAW LIBRARY

NO. 27962

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

CIVIL NO. 05-1-1388-08 (SSM)

In the Matter of
UNITED PUBLIC WORKERS, AFSCME,
LOCAL 646, AFL-CIO,
Complainant-Appellant, Cross-Appellee,

and

MUFI HANNEMAN, Mayor, City and County of Honolulu;
KENNETH NAKAMATSU, Director, Department of
Human Resources, City and County of Honolulu;
JEOFFREY S. CUDIAMAT, Director and
Chief Engineer, Department of Facility Maintenance,
City and County of Honolulu;
DISTRICT ROAD SUPERINTENDENT, Department of
Facility Maintenance, City and County of Honolulu;
DEPARTMENT COORDINATOR, Department of
Facility Maintenance, City and County of Honolulu (2005-124),
Respondents-Appellees, Cross-Appellants,

and

HAWAII LABOR RELATIONS BOARD, State of Hawaiʻi,
Agency-Appellee, Cross-Appellee.[1]/

CIVIL NO. 05-1-1391-08 (SSM)

In the Matter of
UNITED PUBLIC WORKERS, AFSCME,
LOCAL 646, AFL-CIO,
Complainant-Appellant, Cross-Appellee,

and

MUFI HANNEMAN, Mayor, City and County of Honolulu;
KENNETH NAKAMATSU, Director, Department of
Human Resources, City and County of Honolulu;
JEOFFREY S. CUDIAMAT, Director and
Chief Engineer, Department of Facility Maintenance,
City and County of Honolulu;

---

[1]/ Pursuant to Hawaiʻi Rules of Appellate Procedure Rule 43(c) (2000), we have substituted the current public officers as parties or have described certain public-officer parties by their official title.

DISTRICT ROAD SUPERINTENDENT, Department of
Facility Maintenance, City and County of Honolulu;
DEPARTMENT COORDINATOR, Department of
Facility Maintenance, City and County of Honolulu,
Respondents-Appellees, Cross-Appellants,

and

HAWAII LABOR RELATIONS BOARD, State of Hawai'i,
Agency-Appellee, Cross-Appellee.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NOS. 05-1-1388-08 (SSM) and 05-1-1391-08 (SSM))

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Foley, and Leonard, JJ.)

Complainant-Appellant/Cross-Appellee United Public Workers, AFSCME, Local 646, AFL-CIO (UPW) appeals from a June 1, 2006, Judgment entered by the Circuit Court of the First Circuit (circuit court),[2/] which affirmed a decision rendered by the Hawai'i Labor Relations Board (HLRB). Respondent-Appellees/Cross-Appellants the Mayor; the Chief Engineer and Director, the Department Coordinator, and the District Road Superintendent of the Department of Facilities Maintenance; and the Director of the Department of Human Resources, City and County of Honolulu (collectively, the "Employer"), cross-appeal from the same Judgment.

Briefly stated, the underlying facts are as follows. Gregory Ortiz (Ortiz), a City and County of Honolulu (City) employee and member of UPW, was discharged from his position as a Heavy Truck Driver I for unauthorized use of a City vehicle. UPW filed a grievance challenging the discharge. An arbitrator ruled that the discharge sanction was too severe and ordered that Ortiz be reinstated. Ortiz returned to work, but on that day was required to undergo a "pre-employment" controlled substances test

_____

[2/] The Honorable Sabrina S. McKenna presided.

-2-

before being permitted to engage in safety-sensitive functions as a heavy truck driver. Ortiz failed the controlled substances test and was later terminated.

UPW filed a prohibited practices complaint against Employer, alleging, among other things, that by requiring Ortiz to undergo the "pre-employment" controlled substances test, Employer did not comply with the arbitrator's order to reinstate Ortiz. The HLRB ruled that (1) UPW did not prove that Employer failed to comply with the arbitration award and committed a prohibited practice by subjecting Ortiz to "pre-employment" drug[3] testing; and (2) Employer did commit a prohibited practice by breaching its duty to negotiate and consult with UPW regarding certain drug-testing procedures. The UPW and Employer each appealed from the adverse portion of the HLRB's decision. After modifying the HLRB's decision to correct a typographical error, the circuit court affirmed the HLRB's decision. This appeal followed.

For the reasons discussed below, we conclude that the HLRB was correct in denying UPW's claim that Employer failed to comply with the arbitration award and committed a prohibited practice by subjecting Ortiz to "pre-employment" drug testing. We further conclude that the HLRB was partially correct and partially wrong in determining that Employer did commit a prohibited practice by breaching its duty to negotiate and consult with UPW regarding certain drug-testing procedures. Accordingly, we affirm in part and vacate in part the circuit court's Judgment.

BACKGROUND

I.

In 1991, Congress passed the Federal Omnibus Transportation Employee Testing Act (FOTETA), Pub. L. No. 102-143, 105 Stat. 952 (1991). Pursuant to the FOTETA, the Secretary

---

[3] The HLRB used the terms "drug" and "controlled substance" interchangeably and we will do the same in this Memorandum Opinion.

of the United States Department of Transportation (DOT) promulgated Federal Motor Carrier Safety Regulations that require controlled substances and alcohol testing for employees who operate commercial motor vehicles and thereby engage in "safety-sensitive" functions. 49 C.F.R. §§ 382.101-382.605 (hereinafter, the "DOT Rules"). The collective bargaining agreement (CBA) between the City and UPW that is applicable in this case[4] contains controlled substances testing provisions that are intended to comply with the DOT Rules. The CBA provides that "[w]here it is found that a [CBA] section does not comply with the DOT Rules, the DOT Rules shall prevail where valid and the parties shall renegotiate to bring the section into compliance."

## II.

### A.

Ortiz was employed by the City as a Heavy Truck Driver I in the Road Maintenance Division of the Department of Facility Maintenance. The job description for this position includes the operation of a heavy dump truck, with a factory rated capacity of between five and ten tons, "to haul asphalt, sand, gravel, cement, rocks, dirt, and other construction materials, [and] construction waste . . . ." Ortiz's Heavy Truck Driver I position required Ortiz to possess a commercial driver's license (CDL) and involved the performance of safety-sensitive functions, such as driving a commercial motor vehicle. As part of the conditions of his employment, Ortiz was subject to random drug testing.

Ortiz was discharged from his employment with the City for alleged unauthorized use of a City vehicle. Following his discharge, Ortiz was removed from the random drug testing pool.

UPW filed a grievance challenging Ortiz's discharge, and the matter was submitted to binding arbitration. The arbitrator overturned the City's decision to terminate Ortiz and

---

[4] We will use "CBA" to refer to the collective bargaining agreement between the City and UPW that is applicable in this case.

-4-

issued the following award:

> Grievant shall be reinstated to the same or equivalent position that he held when he was terminated and his seniority and other rights as an employee shall be reinstated as they existed on the date of his termination. The reinstatement shall occur within two weeks of the date of this decision. Grievant shall not receive any back pay or credit for the period from his termination until his reinstatement. In any future disciplinary actions, this decision and award shall be treated as a suspension without pay and may be taken into account in the application of progressive discipline.

The circuit court subsequently granted UPW's motion to confirm the arbitrator's award.

### B.

Pursuant to the arbitration award, Cheryl Okuma-Sepe (Okuma-Sepe), the City's Director of the Department of Human Resources, rescinded Ortiz's discharge and reinstated him to his former Heavy Truck Driver I position. Okuma-Sepe also changed Ortiz's discharge to a "leave of absence without pay--suspension." By the time Ortiz's discharge was overturned, he had been out of the random drug testing pool for approximately nine months.

When Ortiz returned to work, he was instructed to undergo "pre-employment" controlled substances testing. The decision to test Ortiz was made by Cynthia Johanson (Johanson), the departmental coordinator of the drug testing program for the City. Based on her interpretation of the DOT Rules, Johanson believed that Ortiz was required to undergo a controlled substances test before resuming his safety-sensitive duties because he had been removed from the random drug testing pool. In this respect, Johanson understood "pre-employment" to be synonymous with "pre-duty" in that employees who had been removed from the random drug testing pool were required to undergo "pre-employment" drug testing.

Ortiz tested positive. Pursuant to provisions in the CBA applicable to an employee who tests positive for a controlled substances for the first time, Ortiz signed a "Last Chance Agreement," was suspended for twenty days, and was placed in a

drug rehabilitation program. Because Ortiz again tested positive for a controlled substance in a subsequent drug test, he was required to and did resign from his job.

C.

Meanwhile, UPW filed a prohibited practices complaint against Employer. Among other things, the UPW alleged that Employer had violated the arbitrator's award by refusing to unconditionally reinstate Ortiz and instead requiring him to submit to a controlled substances test. While the complaint was still pending, UPW submitted a proposal to Okuma-Sepe to modify and amend the CBA to "require[] the City to notify employees of their continued participation in the City's random controlled substance testing program whenever they are expected to be out of work for a period of more than thirty (30) days, so they remain exempt from 'pre-employment testing' upon their resumption of duties." Okuma-Sepe did not respond to UPW's proposal.

The HLRB determined that UPW did not prove that Employer failed to comply the arbitrator's award and committed a prohibited practice by requiring Ortiz to undergo controlled substances testing prior to assuming safety-sensitive job responsibilities. The HLRB found that Employer had rescinded Ortiz's discharge and reinstated Ortiz to his former Heavy Truck Driver I position, thereby satisfying the arbitrator's award. The HLRB further determined that Employer properly administered the pre-duty controlled substances test to Ortiz in order to comply with federal regulations, stating in pertinent part as follows:

> [A]lthough the UWP strenuously argues that [Employer is] required to negotiate over the drug testing provisions before requiring Ortiz to be subject to drug testing, the [HLRB] cannot ignore the federal regulations which require testing of employees who have been out of the random pool for more than 30 days. Clearly, the federal regulations trump any contrary collective bargaining provision and any [Employer] policy on the matter. In this case, the collective bargaining agreement does not address the administration of the test for regular employees who are disciplined or on leave for an extended period and are subsequently reinstated or returned to the job. Thus, the [HLRB] finds that the UPW failed to prove by a preponderance

of evidence that [Employer] committed a prohibited practice by failing to comply with the arbitration award when it drug tested Ortiz prior to his assuming the safety sensitive job responsibilities.

As part of its decision, the HLRB issued a conclusion of law which stated in relevant part:

> 5. . . . . The UPW also failed to prove by a preponderance of evidence that [Employer] undermined the [UPW] and diminished its capacity to effectively represent the employees in the bargaining unit by disregarding the final and binding effect of the [arbitration] award as intended by Section 15 [of the CBA] and unilaterally modifying the provisions of Section 63 [of the CBA] by requiring a pre-employment drug test of a regular employee without even notifying the [UPW] of the mid-term modifications to the applicable terms and conditions of work. The UPW thus failed to prove that the City violated HRS § 89-113(a)(1).

Although the HLRB denied UPW's claim that Employer failed to comply with the arbitrator's award and committed a prohibited practice by subjecting Ortiz to a pre-duty drug test, the HLRB determined that Employer had committed a prohibited practice in refusing to negotiate or consult with UPW on appropriate subjects, namely, "procedures for drug testing employees returning to work after 30 days and/or who have been removed from the random testing pool." The HLRB determined that there is no CBA provision that specifically permits the testing of an employee who is removed from the random drug testing pool due to a job action and then is returned to his or her job. The HLRB further determined that the CBA does not address the conditions or procedures for the removal of an employee from the random pool or notice to UPW of such removal. The HLRB noted that Employer had not notified or consulted with UPW about "the requirement for the drug testing" and that Employer did not respond to UPW's request to negotiate regarding the procedures for an employee's removal from the random drug testing pool.

The HLRB issued the following conclusions of law regarding its determination that the City had committed a prohibited practice by refusing to negotiate or consult with UPW on appropriate subjects:

6. Although certain aspects of controlled substance testing is nonnegotiable because of the federal mandates, there are aspects which are negotiable and are contained in the collective bargaining agreement. The Unit 01 agreement negotiated between the parties further requires that sections of the agreement not in compliance with DOT Rules shall be negotiated into compliance.

7. The drug testing [of] employees who have been taken out of the random testing pool because of absence from the job is clearly not addressed by the agreement.

8. [Employer] failed to notify [UPW] or consult over the drug testing of an employee being returned to work after being taken out of the random pool and wilfully ignored [UPW]'s request to negotiate over the subject matter. Consultation and negotiation are provided for in HRS § 89-9 and Section 1.05 of the [CBA]. The [HLRB] concludes that [Employer] violated HRS § 89-9, thereby committing a prohibited practice in violation of HRS § 89-13(a)(7). The [HLRB] also concludes that the City violated Section 1.05, thereby committing a prohibited practice in violation of HRS § 89-13(a)(8).[5]

Based on these conclusions, the HLRB ordered Employer to cease and desist from taking unilateral actions on matters subject to the negotiations process and deal with [UPW] appropriately. On the matter of drug testing, [Employer is] ordered to negotiate modifications to Section 63.04a [of the CBA] to conform with the DOT Rules[[6]] [§] 382.102 [sic] for CDL drivers.

(Footnote added.)

Despite finding that Employer had engaged in a prohibited practice in failing to negotiate over provisions relating to testing of employees removed from the random drug

---

[5] HRS § 89-13(a)(7) and (8) (Supp. 2009) provide:

(a) It shall be a prohibited practice for a public employer or its designated representative wilfully to:

. . .

(7) Refuse or fail to comply with any provision of this chapter; [or]

(8) Violate the terms of a collective bargaining agreement[.]

[6] The HLRB and the circuit court used the introductory designation "DOT Rules" when referring to a specific section of the Federal Motor Carrier Safety Regulation (FMCSRs). For consistency, we will likewise use "DOT Rules," but will add a section symbol, when referring to a particular section of the FMCSRs.

testing pool, the HLRB rejected UPW's request that Ortiz be reinstated to his position. The HLRB ruled that it would not disturb the consequences of Ortiz's controlled substances testing, which the parties had bargained for and had resulted in Ortiz's resignation.

D.

UPW and Employer each appealed the HLRB's decision to the circuit court. The circuit court consolidated the two appeals. The circuit court modified the HLRB's decision to correct an error in the HLRB's order so that the order correctly refers to DOT Rules § 382.301, rather than DOT Rules § 382.102, a rule that does not exist. The circuit court affirmed the HLRB's decision, as modified, and entered Judgment in favor of the HLRB and against UPW and Employer.

STANDARDS OF REVIEW

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) (1993) to the agency's decision.

HRS § 91-14, entitled "Judicial review of contested cases," provides in relevant part:

(g)  Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1)    In violation of constitutional or statutory provisions; or

(2)    In excess of the statutory authority or jurisdiction of the agency; or

(3)    Made upon unlawful procedure; or

(4)    Affected by other error of law; or

(5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural

defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6).

United Public Workers, AFSCME, Local 646, AFL-CIO v. Hanneman, 106 Hawai'i 359, 363, 105 P.3d 236, 240 (2005) (brackets omitted) (quoting Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai'i 412, 416, 91 P.3d 494, 498 (2004)).

## DISCUSSION

### I.

In its appeal, the UPW argues that: (1) the circuit court erred in affirming the HLRB's decision that UPW did not prove that Employer failed to comply with the arbitrator's award, which ordered Ortiz's reinstatement, and committed a prohibited practice by requiring Ortiz to undergo controlled substances testing before performing safety-sensitive duties; (2) Ortiz's due process rights were violated because he was not given notice that Employer would subject him to controlled substances testing upon his reinstatement and because he was dismissed after testing positive without a pre-termination hearing; and (3) the circuit court erred in affirming the HLRB's decision to refuse UPW's request that Ortiz be reinstated with back pay as a remedy for Employer's prohibited practice in refusing to negotiate and consult with UPW on appropriate subjects. We resolve the arguments raised by UPW on appeal as follows.

### A.

We conclude that the HLRB was correct in denying UPW's claim that Employer failed to comply with the arbitration award and committed a prohibited practice when Employer required Ortiz to undergo a controlled substances test prior to allowing Ortiz to resume his safety sensitive duties. The circuit court properly affirmed the HLRB's decision on this issue.

### 1.

As noted, the Secretary of the DOT has promulgated the DOT Rules which mandate controlled substances and alcohol testing for employees who operate commercial motor vehicles and thereby

-10-

engage in safety-sensitive functions.  Section 63 of the CBA is the section that contains provisions regarding controlled substances and alcohol testing.  The CBA makes clear that Section 63 is intended to comply with the DOT Rules and that the DOT Rules shall prevail if there is any inconsistency between the CBA and the DOT Rules.[7]

DOT Rules § 382.301 states in pertinent part as follows:

**§ 382.301 Pre-employment testing.**

(a)  Prior to the first time a driver performs safety-sensitive functions for an employer, the driver shall undergo testing for controlled substances as a condition prior to being used, unless the employer uses the exception in paragraph (b) of this section.  No employer shall allow a driver, who the employer intends to hire or use, to perform safety-sensitive functions unless the employer has received a controlled substances test result from the MRO or C/TPA[8] indicating a verified negative test result for that driver.

(b)  An employer is not required to administer a controlled substances test required by paragraph (a) of this section if:

(1)  The driver has participated in a controlled substances testing program that meets the requirements of this part within the previous 30 days; and

---

[7] Section 63 of the CBA provides in relevant part as follows:

63.01      STATEMENT OF PURPOSE

63.01 a.   Section 63. is intended to comply with the Omnibus Transportation Employee Testing Act of 1991 and the U.S. Department of Transportation's rules and regulations adopted as provided by the Act, hereinafter "DOT Rules."

63.01 b.   Where it is found that a section does not comply with the DOT Rules, the DOT Rules shall prevail where valid and the parties shall renegotiate to bring the section into compliance.

[8] "MRO" stands for "medical review officer," 49 C.F.R. § 40.3, and "C/TPA" stands for "Consortium/Third party administrator," who is "a service agent that provides or coordinates one or more drug and/or alcohol testing services to DOT-regulated employers."  49 C.F.R. § 382.107.

(2)   While participating in that program, either:

(i)   Was tested for controlled substances within the past 6 months (from the date of application with the employer), or

(ii)   Participated in the random controlled substances testing program for the previous 12 months (from the date of application with the employer); and

(3)   The employer ensures that no prior employer of the driver of whom the employer has knowledge has records of a violation of this part or the controlled substances use rule of another DOT agency within the previous six months.

(c)(1)   An employer who exercises the exception in paragraph (b) of this section shall contact the controlled substances testing program(s) in which the driver participates or participated and shall obtain and retain from the testing program(s) the following information:

(i)   Name(s) and address(es) of the program(s).

(ii)   Verification that the driver participates or participated in the program(s).

(iii)   Verification that the program(s) conforms to part 40 of this title.

(iv)   Verification that the driver is qualified under the rules of this part, including that the driver has not refused to be tested for controlled substances.

(v)   The date the driver was last tested for controlled substances.

(vi)   The results of any tests taken within the previous six months and any other violations of subpart B of this part.

(2) An employer who uses, but does not employ a driver more than once a year to operate commercial motor vehicles must obtain the information in paragraph (c)(1) of this section at least once every six months. The records prepared under this paragraph shall be maintained in accordance with § 382.401.  If the employer cannot verify that the driver is participating in a controlled substances testing program in accordance with this part and part 40 of this title, the employer shall conduct a pre-employment controlled substances test.

49 C.F.R. § 382.301 (emphasis and footnote added).

The DOT has interpreted DOT Rules § 382.301 to require a "pre-employment" controlled substance test whenever a driver has been terminated for more than thirty days and has not participated in a controlled substances testing program

satisfying the DOT requirements. The DOT has provided the following guidance in interpreting DOT Rules § 382.301:

> **Question 3**: Is a pre-employment controlled substances test required if a driver returns to a previous employer after his/her employment had been terminated?
>
> *Guidance*: Yes. A controlled substances test must be administered any time employment has been terminated for more than 30 days and the exceptions under § 382.301(c) were not met.
>
> **Question 4**: Must all drivers who do not work for an extended period of time (such as layoffs over the winter or summer months) be pre-employment drug tested each season when they return to work?
>
> *Guidance*: If the driver is considered to be an employee of the company during the extended (layoff) period, a pre-employment test would not be required so long as the driver has been included in the company's random testing program during the layoff period. However, if the driver was not considered to be an employee of the company at any point during the layoff period, or was not covered by a program, or was not covered for more than 30 days, then a pre-employment test would be required.

Regulatory Guidance for the DOT Rules, 62 Fed. Reg. 16370-01 (April 4, 1997).

In addition to the DOT's regulatory guidance, Employer, after UPW had filed its prohibited practice complaint, sought confirmation from a DOT official that under the DOT Rules, Employer had been required to drug test Ortiz before permitting him to resume safety-sensitive functions. In response to Employer's inquiry, Donald Wayne Carr (Carr), a Field Office Supervisor with the DOT, wrote:

> You[r] letter describes the circumstances of an employee who was terminated and later reinstated by an arbitrator. The employee had been terminated almost a year before being reinstated as if he had never left. You also note that the employee was removed from your random pool at the time he was terminated and did not participate in a similar program during the time prior to his reinstatement. You ask if a pre-employment (pre-duty) test for controlled substances is required.
>
> Your employee is required to take a pre-employment controlled substances test, with a negative result reported to you, prior to allowing the employee to perform safety sensitive functions. . . .
>
> . . . .
>
> The reinstatement of the employee by the arbitrator "as if he never left" may well have economic or other

employer/employee related effects, but would not preempt the federal requirement to conduct a pre-employment controlled substances test prior to his return to safety sensitive functions.

2.

Thus, DOT Rules § 382.301 required Employer to subject Ortiz to a controlled substances test before permitting him to resume his safety-sensitive duties as a Heavy Truck Driver I. Section 63.04 a. of the CBA provides: "Prior to the first time an Employee performs a safety sensitive function and/or being placed on a temporary assignment list, the Employee shall be subject to a controlled substance test, except as provided in the DOT Rules referred to in Section 63.01 a." Section 63.04 a. closely tracks the language of DOT Rules § 382.301. See 49 C.F.R. § 382.301. In addition, Section 63 of the CBA is intended to comply with the DOT Rules. Under these circumstances, we conclude that it is reasonable to interpret Section 63.04 a. in a manner consistent with the corresponding DOT Rules § 382.301.

In any event, the DOT Rules required Employer to subject Ortiz to a controlled substances test before permitting him to engage in safety-sensitive functions because he had been removed from the random testing pool for more than thirty days. Employer was required to comply with the DOT Rules. Although the arbitration award reinstated Ortiz to the same or equivalent position that he held when he was terminated, this reinstatement was necessarily subject to Ortiz passing a controlled substances test before resuming his safety-sensitive duties. Accordingly, the HLRB properly denied UPW's claim that Employer had failed to comply with the arbitration award reinstating Ortiz by requiring him to undergo a controlled substances test. It therefore follows that the HLRB also properly denied UPW's claim that Employer committed a prohibited practice by failing to comply with the arbitration award.

3.

UPW does not dispute that the DOT Rules required Employer to subject Ortiz to the pre-duty controlled substances

-14-

test. Nevertheless, UPW challenges the HLRB's determination that Employer's actions satisfied the arbitration award. In particular, UPW argues that (1) the HLRB's finding that Employer rescinded Ortiz's discharge and reinstated Ortiz to his former position was clearly erroneous; and (2) Employer was collaterally estopped from asserting that Ortiz should be subject to a "pre-employment" drug test. We disagree.

The HLRB's finding that Employer rescinded Ortiz's discharge and reinstated Ortiz to his former position was not clearly erroneous. The record shows that Employer took personnel actions which rescinded Ortiz's discharge and changed it to a "leave of absence without pay--suspension." There was also testimony that although Ortiz was not permitted to drive, he was reinstated and worked for four hours on the day he returned to work. On that day, Ortiz was given the controlled substances test and was placed on authorized leave with pay pending the results of the test. The HLRB's finding was supported by substantial evidence in the record.

Ortiz's argument that Employer was "estopped" or "collaterally estopped" from requiring Ortiz to submit to a controlled substances test upon reinstatement is without merit. The original grievance that was submitted to arbitration did not involve controlled substance testing. In addition, whether Ortiz would be subject to a controlled substances test before resuming his duties was not an issue brought before or decided by the arbitrator. Indeed, the propriety of subjecting Ortiz to such testing was an issue controlled by federal regulations. In confirming the arbitrator's award, the circuit court did not decide whether the award precluded pre-duty controlled substances testing. The circuit court, in orally announcing its decision to grant the UPW's motion to confirm the arbitration award, stated that "the Court is not in any way suggesting that the Court's order requires the City to do anything that is not otherwise legal, that's for the City to respond to in an appropriate manner in an appropriate proceeding."

B.

Ortiz was not denied due process when Employer administered the pre-duty controlled substances test or when Ortiz was dismissed after the second positive test without a pre-termination hearing. Both the CBA[9] and the DOT Rules[10] require an employer to provide educational materials to employees that explain and put the employees "on notice" regarding controlled substance testing requirements and procedures.

On October 13, 1995, the City distributed a memorandum to employees in safety-sensitive positions, describing the procedures for DOT controlled substances and alcohol testing. The memorandum stated, "[i]n addition to the City's policy and

---

[9] Section 63.16 a. of the CBA provides:

**63.16 a.** **EDUCATIONAL MATERIALS.**

The [City] shall provide detailed educational materials to a covered Employee that explains federal regulations and Section 63. At a minimum, the materials shall include the following:

**63.16 a.1.** The categories of Employees who are subject to the regulations.

**63.16 a.2.** Information about safety-sensitive functions to make clear what period of the work day Employee is required to be in compliance.

**63.16 a.3.** Specific information on conduct that is prohibited.

**63.16 a.4.** The circumstances under which a Employee may be subject to an alcohol and controlled substance test.

**63.16 a.5.** The procedures that will be used to test for alcohol or controlled substance.

**63.16 a.6.** The requirement that an Employee submit to a test.

**63.16 a.7.** An explanation of what constitutes a refusal to submit to a test.

**63.16 a.8.** The consequences for an Employee found to have violated Section 63.

**63.16 a.9.** Information on the effects of alcohol and controlled substance.

**63.16 a.10.** The [City] designee to be contacted for questions or additional information.

[10] See DOT Rules § 382.601, 49 C.F.R. § 382.601.

the educational materials on drugs and alcohol which you already have, these internal procedures will help to define the process and explain the responsibilities of people involved in the testing procedures."  The memorandum elaborated on the various situations in which testing was required and provided examples of when an employee would be subject to "pre-employment" or "pre-duty" controlled substances testing.  Included in these examples was the situation involving a "City employee not currently performing safety-sensitive duties, who will begin performing safety-sensitive duties."  This example adequately describes Ortiz's situation.

The record indicates that Ortiz was an employee who would have received this memorandum.  We conclude that this memorandum provided Ortiz with sufficient notice to satisfy the due process requirements of the CBA and the DOT Rules.

Ortiz's resignation pursuant to the Last Chance Agreement (LCA) did not violate his due process rights.  Upon his reinstatement, Ortiz underwent a controlled substances test and tested positive.  An employee who tests positive is given written notice of the test with a copy of the documents to verify the chain of custody.  Section 63.12 d. of the CBA provides that "[p]rior to making a final decision to verify or report a positive test, the Medical Review Officer (MRO) shall give the Employee an opportunity to discuss the test."  An employee may also request an analysis of the split sample within 72 hours of being informed of a verified positive test, and the employee may instruct the MRO to have the analysis performed at another certified laboratory.

Under the CBA, an employee who tests positive for a controlled substance for the first time shall be discharged unless the employee agrees to sign an LCA.  Under the LCA, the employee is suspended for twenty work days instead of being discharged.  The employee agrees to resign on "a no-fault basis" if the employee tests positive for a controlled substance for a second time within a time frame specified in the LCA.  The LCA

-17-

also provides that a resignation from employment deprives the employee of the right to grieve or challenge the resignation. Because Ortiz tested positive for a controlled substance for a second time within the time frame specified in the LCA, Ortiz was deemed to have resigned.

Ortiz's entry into the LCA and his subsequent resignation were pursuant to, and in conformance with, the terms of the CBA. By signing the LCA, Ortiz waived any due process rights he may have had to a pre-termination hearing.

C.

The HLRB did not err in denying UPW's request to reinstate Ortiz with back pay as a remedy for Employer's prohibited practice in breaching its duty to negotiate and consult with UPW on appropriate subjects. Employer was required by federal regulations to have Ortiz undergo a pre-duty controlled substances test. Employer followed the procedures set forth in the CBA for responding to Ortiz's first positive test and second positive test. Ortiz's resignation as a consequence of his second positive test was in accordance with the CBA.

Moreover, as explained below, we conclude that Employer's prohibited practice in breaching its duty to negotiate and consult did not occur until _after_ Ortiz had tested positive. Thus, Ortiz's resignation was not caused by Employer's prohibited practice and reinstating Ortiz with back pay was not an appropriate remedy for Employer's breach of its duty to negotiate and consult.

II.

On cross-appeal, Employer argues that: (1) the HLRB erred in concluding that Employer violated Section 1.05 of the CBA, which imposes a duty on Employer to consult with UPW on certain matters, by failing to comply with Section 63.01 b. of the CBA,[11/] thereby committing a prohibited practice in violation

---

[11/] _See_ footnote 7, _supra_.

of HRS § 89-13(a)(8);[12]/ (2) the HLRB erred in concluding that Employer violated its duty to negotiate under HRS § 89-9 (Supp. 2002), thereby committing a prohibited practice in violation of HRS § 89-13(a)(7);[13]/ (3) the HLRB erred in ordering that Employer negotiate modifications to Section 63.04 a. of the CBA to conform with the DOT Rules § 382.301;[14]/ and 4) the circuit court erred in modifying the HLRB's decision to correct the HLRB's reference to DOT Rules § 382.102. We resolve the arguments raised by Employer on cross-appeal as follows.

A.

1.

Employer had a duty to negotiate and consult with UPW on appropriate matters pursuant to HRS § 89-9 and the CBA. At the time relevant to this case, HRS § 89-9(a) provided in pertinent part:

> (a) The employer and the exclusive representative shall meet at reasonable times, including meetings sufficiently in advance of the April 16 impasse date under section 89-11, and shall negotiate in good faith with respect to wages, hours, the amounts of contributions by the State and respective counties to the Hawaii public employees health fund to the extent allowed in subsection (e), and other terms and conditions of employment which are subject to collective bargaining and which are to be embodied in a written agreement as specified in section 89-10, but such obligation does not compel either party to agree to a proposal or make a concession . . . . .

Section 1.05 of the CBA provides that "[t]he [City] shall consult [UPW] when formulating and implementing personnel policies, practices and any matter affecting working conditions. No changes in wages, hours or other conditions of work contained herein may be made except by mutual consent." Under Section

---

[12]/ See footnote 5, supra.

[13]/ See footnote 5, supra.

[14]/ The HLRB's written order actually ordered Employer to negotiate modifications to Section 63.04 a. to conform with "DOT Rules [§] 382.102." However, as discussed infra, it is clear that the HLRB's reference to "DOT Rules [§] 382.102," was a typographical error and that the HLRB intended to refer to "DOT Rules § 382.301." We will analyze the HLRB's order as if it had referred to "DOT Rules § 382.301."

63.01 b. of the CBA, "[w]here it is found that a section does not comply with the DOT Rules, the DOT Rules shall prevail where valid and the parties shall renegotiate to bring the section into compliance."

In <u>University of Hawai'i Professional Assembly v. Tomasu</u>, 79 Hawai'i 154, 900 P.2d 161 (1995), the Hawai'i Supreme Court concluded that a public employer's duty to bargain includes the duty to engage in midterm bargaining on appropriate subjects when requested by a union. <u>Id.</u> at 159, 900 P.2d at 166. The supreme court stated that "the duty to bargain also arises if a union unilaterally demands 'midterm' bargaining, that is, bargaining midway through an active applicable collective bargaining agreement on bargainable subjects such as wages, hours, or terms of employment." <u>Id.</u>

2.

We conclude that the HLRB was wrong to the extent that it based its prohibited practice determination on Section 63.01 b. of the CBA. That section only requires Employer to renegotiate a controlled substances testing provision of the CBA where the provision does not comply with the DOT Rules. The HLRB apparently concluded that as applied to Ortiz, Section 63.04 a. of the CBA did not comply with DOT Rules § 382.301.

Section 63.04 a. of the CBA provides that an employee shall be subject to a controlled substances test "[p]rior to the first time an Employee performs a safety sensitive function . . . ." DOT Rules § 382.301, which uses almost identical language, has been interpreted as requiring a driver who had been terminated and has not participated in a controlled substances testing program for more than thirty days to take and pass a controlled substances test before performing safety-sensitive functions. Because Section 63.04 a. of the CBA closely tracks the language of DOT Rules § 382.301, it is difficult to see how Section 63.04 a. fails to comply with DOT Rules § 382.301. In light of the parallel language of the two provisions and the intent of the CBA to comply with the DOT

-20-

Rules, it would be reasonable to construe Section 63.04 a. in a manner consistent with DOT Rule § 382.301.

In any event, Section 63.04 a. clearly does not prohibit Employer from requiring an employee, like Ortiz, who has not participated in a controlled substances testing program for more than thirty days due to termination or other prolonged absence, to take a controlled substances test before permitting the employee to engage in safety-sensitive functions. Thus, it cannot be said that Section 63.04 a. fails to comply with the DOT Rules. Accordingly, Employer was not required to negotiate with UPW over Section 63.04 a. pursuant to Section 63.01 b. of the CBA.

We also conclude that the HLRB's decision was wrong to the extent it was premised on a determination that Employer had made a unilateral change in the conditions of employment set forth in Section 63.04 a. by removing employees who were absent or were expected to be absent from work for a prolonged time period from the random drug testing pool. Section 63.04 a. is silent on the subject on when an employee can be removed from the random testing pool. Thus, the removal of Ortiz from the random testing pool as a result of his discharge did not constitute a unilateral change in matters covered by the CBA.

In addition, we note that the record indicates that Employer had an established practice of removing employees who were absent or were expected to be absent from work for a prolonged time period from the random drug testing pool. Employer also had an established practice of requiring those employees to undergo a controlled substances test before resuming safety-sensitive functions. Thus, removing Ortiz from the random testing pool and requiring him to undergo a controlled substances test upon his return to work after a prolonged absence was not a unilateral change effected by Employer, but was consistent with Employer's established practice.

DOT Rules § 382.301 provides employers with the discretionary authority to exempt individuals already

participating in an approved testing program from having to undergo a pre-employment controlled substances test. DOT Rules § 382.301 does not require that employers establish specific procedures on when an employee will be removed from participation in a testing program.

We conclude that the HLRB was not justified in ordering Employer to negotiate modifications to Section 63.04 a. to conform with DOT Rules § 382.301 based on either (1) Section 63.01 b. of the CBA; or (2) an alleged unilateral change by Employer of the conditions of employment set forth in Section 63.04 a. of the CBA by removing employees from the random drug testing pool.

3.

On the other hand, after Ortiz failed the controlled substances test that was administered upon his return to work, UPW sent a letter to the City requesting that Section 63.04 a. be modified to provide that

> CDL employees who are suspended more than 30 days, on leave of absence more than 30 days, or discharged pending grievance shall be notified in writing by [the City] of their continued participation in random controlled testing prior to the expiration of the 30 days to remain exempt from pre-employment testing upon their resumption of duties after an absence of more than 30 days pursuant to DOT [Rules §] 382.301(b).

The issue of whether an employee who was discharged pending grievance or will be absent from work for more than thirty days would be permitted to remain in the random drug testing pool and thus be exempt from having to undergo a controlled substances test before resuming safety-sensitive functions is not expressly covered by the CBA. This issue involves a term or condition of employment and is a matter affecting working conditions. Thus, once UPW sent its letter advising Employer of UPW's desire to negotiate and consult over this issue, Employer had a duty under HRS § 89-9(a) and Section 1.05 of the CBA to negotiate and consult with UPW. See Tomasu, 79 Hawai'i at 159-63, 900 P.2d at

166-70. By failing to respond to UPW's letter, Employer breached this duty.[15]/

B.

We reject Employer's argument that the circuit court erred in modifying the HLRB's decision to refer to DOT Rules § 382.301 instead of DOT Rules § 382.102. The HRLB's reference to DOT Rules § 382.102, which is a non-existent section, was clearly a typographical error that was subject to correction by the circuit court. See State v. DeMille, 7 Haw. App. 323, 326-27, 763 P.2d 5, 7-8 (1988).

CONCLUSION

With respect to the issues raised by UPW in its appeal to this court, we affirm the June 1, 2006, Judgment of the circuit court.

With respect to the issues raised by Employer in its cross-appeal to this court, we hold as follows:

1.  We vacate the circuit court's Judgment to the extent that it affirmed: (a) the HLRB's decision that Employer committed a prohibited practice based on (i) Section 63.01 b. of the CBA or (ii) an alleged unilateral change by Employer of the conditions of employment set forth in Section 63.04 a. of the CBA by removing employees from the random drug testing pool; and (b) the resulting order of the HLRB that Employer negotiate modifications to Section 63.04 a. to conform with DOT Rules § 382.301.

2.  We affirm the circuit court's Judgment to the extent it affirmed the HLRB's decision that Employer committed a

_____

[15]/ Although Employer was required by the DOT Rules to subject drivers who had not participated in a controlled substances testing program for more than thirty days to a controlled substances test before permitting the driver to resume safety-sensitive functions, the DOT Rules did not address the circumstances under which an employee would be subject to removal from a testing program. Thus the issue over which UPW asked Employer to negotiate and consult was not precluded by the DOT Rules. See Tomasu, 79 Hawai'i at 158, 900 P.2d at 165 (concluding that while compliance with federal law is not negotiable, "where the employer has discretion under federal law, regulation, or administrative opinions in implementing federal law, the duty to bargain applies").

-23-

prohibited practice by breaching Employer's duty to negotiate and consult with UPW when Employer failed to respond to UPW's letter requesting a modification to Section 63.04 a. of the CBA.

3.    We affirm the circuit court's decision to modify the HLRB's decision to correct an error in the HLRB's order so that the order correctly refers to DOT Rules § 382.301, rather than DOT Rules § 382.102.

4.    We remand the case to the circuit court for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, March 19, 2010.

On the briefs:

Herbert Takahashi
Rebecca L. Covert
(Takahashi Vasconcellos & Covert)
for Complainant-Appellant,
Cross-Appellee

Carrie K.S. Okinaga
Corporation Counsel
Paul K.W. Au
Deputy Corporation Counsel
City and County of Honolulu
for Respondents-Appellees,
Cross-Appellants

Chief Judge

Associate Judge

Associate Judge

-24-